# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **TIMOTHY J. RICHISSIN**<br>3632 Berkeley Lane<br>Brunswick, OH 44212-1590<br><br>and<br><br>**HEIDI C. RICHISSIN**<br>3632 Berkeley Lane<br>Brunswick, OH 44212-1590<br><br>    Plaintiffs,<br><br>  v.<br><br>**RUSHMORE LOAN MANAGEMENT SERVICES, LLC**<br>℅ Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215<br><br>and<br><br>**U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE FOR THE LOAN ACQUISITION TRUST 2017-RPL1**<br>℅ CTD Corporation System, Inc.<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>    Defendants. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

  Plaintiffs Timothy J. Richissin and Heidi C. Richissin, through counsel, state as follows for his *Complaint for Damages* against Defendants Rushmore Loan Management Services, LLC and U.S. Bank Trust National Association, as Trustee for the Loan Acquisition Trust 2017-RPL1 (the "Complaint"):

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Timothy J. Richissin and Heidi C. Richissin (collectively, "Plaintiffs" or the "Richissins") own real property and improvements located thereupon located at and commonly known as 3632 Berkeley Lane, Brunswick, OH 44212-1590 (the "Home").

2. Plaintiffs currently occupy and maintain the Home as their primary, principal residence and have so maintained the Home at all times relevant to the causes of action pleaded in this Complaint.

3. On February 19, 2004, Plaintiffs executed a promissory note in the amount of $236,524.97 (the "Note") and a mortgage on the Home purportedly securing the Note (the "Mortgage") (collectively, the "Loan").

4. Defendant Rushmore Loan Management Services, LLC ("Rushmore") is a foreign limited liability corporation incorporated under the laws of the State of Delaware and registered to do business in the State of Ohio, with its corporate headquarters located in Irvine, California.

5. Rushmore is servicer for the Loan and has serviced the Loan since February 1, 2017.

6. Defendant U.S. Bank Trust National Association, as Trustee for the Loan Acquisition Trust 2017-RPL1 ("USBT") is a federal banking institution incorporated under the laws of the State of Delaware and the current assignee of the Loan.

7. Rushmore services the Loan on behalf of USBT.

8. Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA").

9. This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

10. Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the Home, the property that is the subject of the action, is located within this District.

## SUMMARY OF CAUSES OF ACTION

11. This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

12. The CFPB issued final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010), specifically the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) which became effective on January 10, 2014.

13. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute ''servicing,'' as defined in this rule, and include, for example*, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, *and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans*." 78 Fed. Reg. 10696, 10739 (emphasis added).

14. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

15. The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

16. Rushmore is subject to the aforesaid regulations and is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

17. Plaintiffs assert a claim for relief against Rushmore for violations of the specific rules under RESPA and Regulation X, as set forth, *infra.*

18. Plaintiffs have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

19. Plaintiffs further assert a state law statutory claim for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

20. Plaintiffs are each a "buyer" as defined by R.C.1322.01(H), as each is an individual whose loan is serviced by a mortgage servicer, Rushmore.

21. Rushmore is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(AA).

22. Rushmore is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

## STATEMENT OF FACTS

### (Prior Litigation and Settlement Agreements)

23. On or about May 3, 2013, non-Party Household Realty Corporation ("HRC"), the prior servicer of the Loan until February 1, 2017, initiated foreclosure proceedings against Plaintiffs in the Court of Common Pleas for Medina County, Ohio, in the case caption and otherwise identified as *Household Realty Corporation v. Timothy J. Richissin*, et al., Case No. 13CIV0557 (the "Foreclosure").

24. The contested claims in the Foreclosure were resolved through a "CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS" (the "First Agreement").

25. As part of the Agreement, HRC was to delete the tradeline for the Loan from Plaintiffs' credit report and to the national credit reporting agencies, Equifax, Experian, and Transunion (the "CRAs") that the tradeline for the Loan had been deleted.

26. Upon USBT's purchase of the Loan in or around February 2017 and Rushmore obtaining servicing rights to the Loan effective February 1, 2017, USBT and Rushmore (collectively, "Defendants") became obligated under the terms of the First Agreement and to continue servicing the Loan in accordance with the same.

27. Rushmore, however, reinstated the reporting of the tradeline for the Loan to the CRAs which Plaintiffs alleged was in violation of the terms of the First Agreement.

28. Plaintiffs attempted to resolve the alleged breach of the First Agreement through sending a notice of error to Rushmore.

29. Plaintiffs' attempts to resolve the alleged breach of the First Agreement proved fruitless and on or about April 22, 2020, Plaintiffs initiated litigation against Defendants in the United States District Court for Northern District of Ohio in the case captioned and identified as

*Timothy J. Richissin*, et al. *v. Rushmore Loan Management Services, LLC*, et al., Case No. 1:20-cv-00871-PAG (the "Federal Litigation").

30. Plaintiffs and Defendants (collectively, the "Parties") entered into a "CONFIDENTIAL SETTLEMENT AGREEMENT" to resolve the contested claims in the Federal Litigation (the "Second Agreement"). *A copy of the Second Agreement is not attached to this complaint due to its confidentiality provisions. Defendants, as parties to the Second Agreement, are each already aware of and in possession of a copy of the Second Agreement. Plaintiffs can provide a copy of the Agreement to the Court, as necessary, at a later date in compliance with its confidentiality provisions.*

31. The Second Agreement, in pertinent part, dictated:

   a. Plaintiffs were to remit Four Thousand Dollars ($4,000.00) to reinstate the Loan as of December 23, 2020;

   b. Plaintiffs' next monthly payment on the Loan would be due on or before December 24, 2020; and,

   c. Defendants were to waive any fees, charges, and amounts claimed otherwise associated with late or missed payments on the Loan from August 2020 through December 23, 2020.

**(Plaintiffs' Performance and Defendants' Breach of the Second Agreement)**

32. Plaintiffs timely remitted the $4,000.00 reinstatement payment via Cashier's Check No. 0438509511 from U.S. Bank, National Association, obtained on or about December 14, 2020 (the "Reinstatement Payment"). *See*, a copy of the cashier's check representing the Reinstatement Payment, attached as **Exhibit 1**.

33. Plaintiffs subsequently remitted their monthly periodic payments due on and for December 24, 2020 and thereafter and Defendants applied such payments on the following dates:

      a.      Payment due for December 24, 2020 on January 25, 2021;

      b.      Payment due for January 24, 2021 on January 31, 2021;

      c.      Payment due for February 24, 2021 on March 1, 2021; and,

      d.      Payment due for March 24, 2021 on April 13, 2021.

*See*, a copy of the April 13, 2021 mortgage statement for the Loan, attached as **Exhibit 2**.

34. Despite Plaintiffs having remitted the payments due and owing under the Loan and the Second Agreement, Defendants have consistently claimed that Plaintiffs were at least one (1) to two (2) months delinquent on their obligations when Plaintiffs should have been current.

**(Plaintiffs' Notice of Error and Defendants' Failure to Correct the Errors and Breach)**

35. On or about February 17, 2021, Plaintiffs, through counsel, sent a notice of error captioned "Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11) for Breach of Settlement Agreement" ("NOE #1") via Certified Mail [Tracking No. 70201810000156130148] to Rushmore at the address designated by Rushmore for borrowers to send notices of error pursuant to 12 C.F.R. § 1024.35 and requests for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address"). *See*, a copy of NOE #1, without enclosures, with tracking information from the website for the United States Postal Service (USPS) (www.usps.com), attached as **Exhibit 3**.

36. Through NOE #1, Plaintiffs alleged that Rushmore breached the Second Agreement, subsequently wrongfully claimed that Plaintiffs were delinquent on their obligations under the Loan and the Second Agreement, and imposed unwarranted fees or charges to the Loan for the manufactured delinquency. *See*, Exhibit 3.

37. Rushmore received NOE #1 at the Designated Address on or before March 18, 2021.

38. Rushmore sent correspondence responding to NOE #1 dated April 28, 2021 ("Response to NOE #1"). *See*, a copy of Response to NOE #1 without enclosures, attached as **Exhibit 4**.

39. Through Response to NOE #1, Rushmore claimed that no errors occurred, but its response is contradictory and evidences its failure to perform a reasonable investigation into the claimed errors. *See*, Exhibit 4.

40. Specifically, despite plainly acknowledging "the account reinstatement date of December 24, 2020", Rushmore then states that the installment payment posted on January 25, 2021, was applied to the payment due in and for November 2020—had the Loan actually been reinstated as of December 24, 2020, as agreed in the Second Agreement, there would have been no payment due for November 2020 after such date. *See*, Exhibit 4.

41. Response to NOE #4 confirms that Rushmore has improperly applied Plaintiffs' December 24, 2020 payment to the payment due and owing for November 2020, and has improperly applied each of Plaintiffs' subsequent payments to the Loan in the same manner.

42. To date, Rushmore still claims that Plaintiffs are delinquent in their obligations under the Loan and continue to send monthly periodic billing statements reflecting Defendants' breach of the Second Agreement.

**IMPACT UPON AND DAMAGES SUFFERED BY PLAINTIFF**

43. Defendants have breached the Second Agreement and have refused to properly correct the accounting errors on the Loan despite Plaintiffs' good faith efforts regarding the same and Rushmore has otherwise failed to properly explain why no errors have occurred in the accounting of the Loan.

44. Defendants' improper actions caused Plaintiffs to suffer from actual and proximate damages including:

   a. Legal fees, costs, and expenses to submit NOE #1 to Rushmore in a good faith attempt to amicably resolve this matter or to have Rushmore mitigate the harm caused to Plaintiffs to which Plaintiffs did not receive a proper or adequate response;

   b. Improper fees and charges imposed on the Loan since December 24, 2020 including late fees and other default servicing related fees for which Plaintiffs are personally obligated or which otherwise negatively impacts any equity in the Home to which they are entitled; and,

   c. Per the terms of the agreement, Rushmore does not report the status of the loan to any credit reporting agencies and Rushmore has failed to provide any correspondence, statements, or writing otherwise to show that Plaintiffs have paid as agreed which has prevented Plaintiffs from taking such actions as refinancing at a significantly lower interest rate or selling the Home and obtaining a loan for the purchase of a new home; and,

   d. Severe emotional distress driven by this manufactured delinquency and by fear that this manufactured delinquency would be the start of a slippery slope leading to a potential default and foreclosure unless Plaintiffs pay amounts and fees which are not warranted which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

45. Rushmore's actions are part of a pattern and practice of behavior in violation of Meyer's rights and in abdication and contravention of Rushmore's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

46. As of the filing of this Complaint, consumers, nationally, have lodged:

   a. Two hundred forty-two (242) consumer complaints against Rushmore specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages;

   b. Five Hundred Sixty Three (563) consumer complaints against Rushmore specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages; and,

   c. Seven hundred eighty-two (782) consumer complaints against Rushmore specifically concerning the issue identified on the CFPB's consumer complaint database as "trouble during payment process" related to mortgages.

Each such complaint is filed and catalogued in the CFPB's publicly accessible online database (accessible at http://www.consumerfinance.gov/data-research/consumer-complaints).

47. Plaintiffs have reviewed the CFPB's consumer complaint database and have identified other similar RESPA violations by Rushmore as alleged by other consumers, specifically having reviewed fifteen (15) consumer complaints attached hereto and identified as **Composite Exhibit 5**. The date, details, and a narrative disclosed by the consumer are set forth in each complaint. The complaints evidence conduct showing that Rushmore has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

## COUNT ONE: AGAINST ALL DEFENDANTS
## BREACH OF CONTRACT

48. Plaintiffs restate and incorporate the statements and allegations contained in paragraphs 1 through 47 in their entirety, as if fully rewritten.

49. The Parties entered into the Second Agreement which is an enforceable contract between the Parties.

50. Plaintiffs have fully performed their obligations pursuant to the Second Agreement by timely remitting the necessary funds to Rushmore for the reinstatement of the Loan and satisfying any other necessary conditions.

51. Despite the Plaintiffs' compliance with and satisfaction of the conditions of the Second Agreement, Defendants breached the Agreement by failing to reinstate the Loan, improperly applying each of Plaintiffs' payments made on or after December 24, 2020, and manufacturing a delinquency on the Loan.

52. Plaintiffs have fully performed their obligations pursuant to the Second Agreement by remitting the payment due and by otherwise meeting each and every obligation imposed by the same.

53. As a result of Defendants' actions, Defendants are liable to Plaintiffs for actual damages as further described, *supra*.

## COUNT TWO: AGAINST RUSHMORE
## VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) AND (k)

**(Failure to properly respond to NOE #1)**

54. Plaintiff repeats and realleges paragraphs 1 through 47 with the same force and effect as though fully set forth hereon.

55. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information

that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

56. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

57. A servicer must respond to a notice of error by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

58. A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

> (A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.
>
> (B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

      (C)      For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

59. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

60. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

61. NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibit 3.

62. Rushmore received NOE #1 at the Designated Address on or before March 18, 2021 and admitted such receipt in the Response to NOE #1. *See*, Exhibit 4.

63. Through NOE #1, Plaintiffs alleged that Rushmore breached the Second Agreement, subsequently wrongfully claimed that Plaintiffs were delinquent on their obligations under the Loan and the Second Agreement, and imposed unwarranted fees or charges to the Loan for the manufactured delinquency. *See*, Exhibit 3.

64. Rushmore sent Response to NOE #1 on or around April 28, 2021. *See*, Exhibit 4.

65. Rushmore did not satisfy their obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) through Response to NOE #1 as Rushmore claimed that no error(s) alleged through NOE #1 occurred. *See*, Exhibit 4.

66. Rushmore did not satisfy their obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B) through Response to NOE #1 as Rushmore failed to perform a reasonable investigation into the errors alleged through NOE #1 prior to claiming that the errors did not occur. *See*, Exhibit 4.

67. Through Response to NOE #1, Rushmore claimed that no errors occurred, but its response is contradictory and evidences its failure to perform a reasonable investigation into the claimed errors. *See*, Exhibit 4.

68. Specifically, despite plainly acknowledging "the account reinstatement date of December 24, 2020", Rushmore then states that the installment payment posted on January 25, 2021, was applied to the payment due in and for November 2020—had the Loan actually been reinstated as of December 24, 2020, as agreed the Second Agreement, there would have been no payment due for November 2020 after such date. *See*, Exhibit 4.

69. Response to NOE #4 confirms that Rushmore has improperly applied Plaintiffs' December 24, 2020 payment to the payment due and owing for November 2020, and has improperly applied each of Plaintiffs' subsequent payments to the Loan in the same manner, and that Rushmore failed to correct the error. *See*, Exhibit 4.

70. Rushmore's failure to properly respond to NOE #1 by failing to correct its errors or to otherwise perform a reasonable investigation into the errors alleged therein constitute one (1) violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, Plaintiffs has suffered actual damages as detailed, *supra*.

71. Rushmore's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

72. Rushmore's conduct as pled, *supra*, shows a conscious disregard for Plaintiffs' rights.

73. As a result of Rushmore's actions, Rushmore is liable to Plaintiffs for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

74. Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT THREE: AGAINST RUSHMORE**
**VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.***

75. Plaintiffs restate and incorporate the statements and allegations contained in paragraphs 1 through 47 in their entirety, as if fully rewritten.

76. "No person...shall act as a…mortgage servicer…without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a…mortgage servicer...in this state." R.C. 1322.07(A).

77. Rushmore, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

78. Rushmore is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, including, *inter alia*, License Nos. RM.850289.000, RM.850289.001-BR, RM.850289.002-BR, RM.850289.003-BR, RM.850289.004-BR.

79. Plaintiffs are each a buyer as defined by the RMLA, as the Loan is serviced by Rushmore, a mortgage servicer. R.C. 1322.01(H).

80. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.* cannot:

  (B) Make false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations; [or]

  (C) Engage in conduct that constitutes improper, fraudulent, or dishonest dealings[.]

R.C. 1322.40.

81. Rushmore, in breaching the Second Agreement, wrongfully claiming that Plaintiffs were delinquent on their obligations under the Loan and the Second Agreement, imposing unwarranted fees or charges to the Loan for the manufactured delinquency, and failing or otherwise refusing to properly handle the error resolution processes related to Loan, engaged in a continued course of misrepresentations by making false or misleading statements of a material fact. R.C. 1322.40(B).

82. Rushmore's conduct, in breaching the Second Agreement, wrongfully claiming that Plaintiffs were delinquent on their obligations under the Loan and the Second Agreement, imposing unwarranted fees or charges to the Loan for the manufactured delinquency, and failing or otherwise refusing to properly handle the error resolution processes related to Loan, constitutes violations of R.C. 1322.40(C).

83. Rushmore's conduct caused Plaintiffs to suffer actual damages, as further described, *supra*.

84. As a result of Rushmore's conduct, Rushmore is liable to Plaintiffs for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

85. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

  (3) Act with reasonable skill, care, and diligence; [and]

>   (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

86.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

87.     Rushmore's conduct, in breaching the Second Agreement, wrongfully claiming that Plaintiffs were delinquent on their obligations under the Loan and the Second Agreement, imposing unwarranted fees or charges to the Loan for the manufactured delinquency, and failing or otherwise refusing to properly handle the error resolution processes related to Loan, constitutes violations of R.C. 1322.45(A)(3)-(4).

88.     As a result of Rushmore's conduct, Rushmore is liable to Plaintiffs for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Timothy J. Richissin and Heidi C. Richissin pray that this Court grant judgment against Defendants Rushmore Loan Management Services, LLC and U.S. Bank Trust National Association, as Trustee for the Loan Acquisition Trust 2017-RPL1 and award them the following:

A. Actual damages from Defendant Rushmore Loan Management Services, LLC and Defendant U.S. Bank Trust National Association, as Trustee for the Loan Acquisition Trust 2017-RPL1 in an amount to be determined at trial for the allegations contained in Count One;

B. An award of actual damages from Defendant Rushmore Loan Management Services, LLC in an amount to be determined at trial for the allegations contained in Counts Two and Three;

C. An award of statutory damages of Two Thousand Dollars ($2,000.00) from Defendant Rushmore Loan Management Services, LLC for each violation of RESPA contained in Count Two;

D. For punitive damages against Defendant Rushmore Loan Management Services, LLC as to Count Three;

E. For attorney's fees and costs as to Counts One through Three;

F. For such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
Brian D. Flick (0081605)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Timothy J. Richissin and Heidi C. Richissin*

**JURY DEMAND**

  Plaintiffs Timothy J. Richissin and Heidi C. Richissin respectfully demand a trial by jury on all such claims that may be so tried.

               */s/ Marc E. Dann*
               Marc E. Dann (0039425)
               Daniel M. Solar (0085632)
               Michael A. Smith Jr. (0097147)
               Brian D. Flick (0081605)
               Dann Law
               *Counsel for Plaintiffs Timothy J. Richissin*
               *and Heidi C. Richissin*